

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DANIEL A. MAJETTE,

    Plaintiff,

v.                                                            Civil Action No. 3:07cv591

GEO GROUP, INC, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se*, filed this action alleging that Defendants Turner, Richardson, Davis, and GEO Group subjected him to cruel and unusual punishment in violation of the Eighth Amendment.[1] The matter is before the Court on the supplemental motion for summary judgment filed by Turner and Richardson and the motion for summary judgment filed by Davis and GEO Group.[2] Furthermore, as explained below, in light of the recent decision of the Supreme Court of the United States in *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), it is appropriate to revisit the Court's prior ruling with respect to Plaintiff's Eighth Amendment claims against Turner and Richardson.

## I. PROCEDURAL HISTORY

### A. Plaintiff's Claims

Plaintiff contends that he is entitled to relief upon the following grounds:

Claim 1     Defendant Turner violated Plaintiff's rights under the Eighth Amendment because:

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[2] GEO Group is a private corporation that operated the Lawrenceville Correctional Center ("LCC") at the relevant time. Turner is an employee of GEO Group.

        (a)    Turner placed handcuffs too tightly on Plaintiff.
        (b)    Turner failed to provide Plaintiff with access to medical care upon Plaintiff's return to LCC.

Claim 2    Defendant GEO Group was deliberately indifferent to the conduct of its employees.

Claim 3    Defendants Richardson and Davis violated Plaintiff's rights under the Eighth Amendment because:
        (a)    Richardson and Davis failed to loosen Plaintiff's handcuffs.
        (b)    Richardson and Davis failed to provide Plaintiff with prompt access to medical care for injuries he sustained as a result of his handcuffs.

Plaintiff demands injunctive relief and monetary damages.

## B.    Dispositive Motions Filed By the Parties

By Memorandum Opinion and Order entered on August 6, 2009, the Court dismissed as moot Plaintiff's demand for injunctive relief against Defendants Turner and GEO Group.

By Memorandum Opinion entered on September 17, 2009, the Court granted Defendants Richardson and Davis's motion for summary judgment and dismissed Plaintiff's claims for monetary damages with respect to Claims 3(a) and 3(b). The Court found that Plaintiff had not sustained his burden with respect to the objective component of an Eighth Amendment claim. Specifically, because he had not sustained more than a *de minimis* injury, according to the then-controlling precedent from the United States Court of Appeals for the Fourth Circuit, Claims 3(a) and 3(b) could not survive summary judgment. *See Majette v. Geo Group, Inc.*, 3:07CV00591, 2009 WL 2986637, at *2-3 (E.D. Va. Sept. 17, 2009) (*citing Riley v. Dorton*, 115 F.3d 1159, 1167, 1168 (4th Cir. 1997) (en banc); *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc)). Shortly thereafter, Defendants GEO Group and Turner moved for summary judgment

and Defendants Richardson and Davis moved for summary judgment with respect to Plaintiff's claims for injunctive relief.

### C. Impact of *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), on the September 17, 2009 Memorandum Opinion and Order

On February 22, 2010, the Supreme Court explicitly rejected the Fourth Circuit's requirement that an excessive use of force must result in more than a *de mininis* injury to demonstrate an Eighth Amendment violation:

> This Court's decision [in *Hudson v. McMillian*, 503 U.S. 1 (1992)] did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from "significant" to "non-*de minimis*" - whatever those ill-defined terms might mean. Instead, the Court aimed to shift the "core judicial inquiry" from the extent of the injury to the nature of the force - specifically, whether it was nontrivial and "was applied . . . maliciously and sadistically to cause harm." [*Id.*] at 7. To conclude, as the District Court did here, that the absence of "some arbitrary quantity of injury" requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry. *Id.* at 9.

*Wilkins*, 130 S. Ct. at 1179 (omission in original; parallel citations omitted).

Because the Court's prior grant of summary judgment to Defendants Richardson and Davis relied on an interpretation of the Eighth Amendment that has been rejected by the Supreme Court in *Wilkins*, the Court will VACATE the September 17, 2009 Memorandum Opinion and Order. *See Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (explaining that reconsideration is appropriate where "a controlling or significant change in the law" has occurred). The Court will proceed to address the other arguments Defendants Richardson and Davis have advanced as to why they are entitled to summary judgment.

### D. Impact of *Wilkins v. Gaddy* on the Motion for Summary Judgment Filed by Turner and GEO Group

Turner contends that he is entitled to summary judgment because "Majette's injuries did not rise above a *de minimis* level." (GEO Group and Turner's Mem. Supp. Mot. Summ. J. ("GEO Group Summ. J.") 4.) Given the decision in *Wilkins*, the lack of a more than *de minimis* injury does not foreclose relief upon Plaintiff's Eighth Amendment claims. Turner also mentions that in order to establish an Eighth Amendment claim, Plaintiff must also demonstrate that "subjectively" Turner acted with a "'sufficiently culpable state of mind.'" (GEO Group Summ. J. 3 (*quoting Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).) Turner, however, fails to offer any discussion as to why, under the relevant law and facts, Plaintiff has not established the subjective component for his Eighth Amendment claims. Therefore, Turner has failed to demonstrate that he is entitled to summary judgment.

GEO Group, in turn, argues that because Plaintiff cannot establish that the actions of its employee Turner "constituted a violation of the Eighth Amendment, it follows that GEO likewise cannot be held constitutionally liable." (GEO Group Summ. J. 5.) Because GEO Group has failed to demonstrate that the Eighth Amendment claims against Turner should be dismissed, no support exists for its argument for summary judgment. Accordingly, the motion for summary judgment filed by Turner and GEO Group (Docket No. 82) will be DENIED WITHOUT PREJUDICE.

## II. DAVIS AND RICHARDSON'S MOTIONS FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

4

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In support of the original and supplemental motions for summary judgment, Defendants Richardson and Davis have tendered their own affidavits. In opposition to the motions for summary judgment, Plaintiff offers his verified amended complaint and his own sworn statement. In light of the foregoing principles and submissions, the facts set forth below are presumed true for purposes of the motion for summary judgment.

A.  **Summary of Pertinent Facts**

In June of 2006, Plaintiff was confined at LCC. On June 8, 2006, Plaintiff was transported from LCC to the Medical College of Virginia ("MCV") for an examination at the MCV eye clinic. Defendant Turner, a correctional officer employed by GEO Group, placed handcuffs tightly on Plaintiff's wrists prior to Plaintiff's transportation to MCV. Plaintiff advised Defendant Turner that the handcuffs were too tight. Defendant Turner removed the handcuffs, but then replaced them fastening them even more tightly. Plaintiff once again informed Defendant Turner that the handcuffs were too tight. Defendant Turner smirked at Plaintiff, but otherwise ignored his request. Defendant Turner also placed a "black box" over the handcuffs. (Am. Compl. ¶ 17; Pl.'s Decl. Opp'n Summ. J. ("Pl.'s Decl.") ¶ 6.)

Upon his arrival at MCV, Plaintiff was placed in the MCV holding unit. The holding unit "is a secure, supervised waiting area for inmates who have been transported to the hospital for outpatient medical appointments." (Defs.' Mem. Supp. Summ. J. (Docket No. 49) Ex. I, ¶ 3.) Defendants Richardson and Davis provided security for the holding unit. Plaintiff "advised Richardson and Davis on different occasions that the restraints were too tight and that the 'black box' had not been removed." (Pl.'s Decl. ¶ 9.) Plaintiff further "showed Richardson and Davis the swelling and bruising of [his] left and right wrist and advised them that [his] hands were numb." (Pl.'s Decl. ¶ 9.) Defendants Richardson and Davis informed Plaintiff that *"it is the duty of the officers from your correctional facility to loosen the restraints."* (Am. Compl. ¶ 20 (emphasis in original).) Although Defendants Richardson and Davis do not specifically remember Plaintiff, they swear that they would have advised the transporting officers from

Plaintiff's institution of his complaint that his restraints were too tight.[3] (Defs.' Mem. Supp. Summ. J. Ex. I ¶ 7, Ex. II ¶ 7.)

Shortly thereafter, Plaintiff was taken to the MCV eye clinic by the transportation officers from his institution. (Defs.' Mem. Supp. Summ. J. Ex. I ¶ 6, Ex. II ¶ 7.) Nevertheless, the record does not indicate that the transportation officers loosened Plaintiff's restraints or that Plaintiff complained to these officers about his restraints. During his examination by the MCV physician, Plaintiff "emotionally 'broke down.'" (Am. Compl. ¶ 24.) "GEO security and transportation employee, Constance Townes, noticed the injuries on the plaintiff's hands and wrists and immediately loosened the restraints." (Am. Compl. ¶ 24.) "The plaintiff suffered extensive swelling and bruising to both his left and right wrist. The injuries sustained by the plaintiff lasted for several days." (Am. Compl. ¶ 27.)

Upon his return to LCC, Defendant Turner denied Plaintiff access to medical attention and directed that Plaintiff return to his housing unit. Plaintiff did not receive medical attention until several hours later, when the counselor in Plaintiff's housing unit requested medical attention for Plaintiff. The parties have not provided admissible evidence regarding what medical care, if any, Plaintiff required.

---

[3] Defendants Davis and Richardson explain that only the transporting officers have a key to the inmate's restraints. (Defs.' Mem. Supp. Summ. J. Ex. I ¶ 7, Ex. II ¶ 7.) Therefore, if an inmate complains to them that his restraints are too tight, they advise the transporting officers because the transporting officers have the key to the restraints. (Defs.' Mem. Supp. Summ. J. Ex. I ¶ 7, Ex. II ¶ 7.)

## B. Analysis

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (*citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (*quoting Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must show, "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (*citing Wilson*, 501 U.S. at 301-03). Deliberate indifference requires the plaintiff to produce evidence that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding and the subjective component is more demanding. *See Williams*, 77 F.3d at 761. With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 130 S. Ct.

8

1175, 1179 (2010); *see id.* at 1178 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (*quoting Hudson*, 503 U.S. at 9)). With respect to the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (*quoting Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Specifically, "the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (*quoting Hudson*, 503 U.S. at 7).

It is not clear whether Richardson and Davis's failure to loosen Plaintiff's handcuffs should be evaluated as a claim for excessive force or as a challenge to Plaintiff's conditions of confinement.[4] *Compare Hudson*, 503 U.S. at 6-7 (instructing that "whenever prison officials stand accused of using excessive physical force . . . the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm") and, *Williams*, 77 F.3d at 764-65 (analyzing inmates' complaints about eight-hour confinement in restraints as excessive force claim), *with Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) (employing deliberate indifference standard to inmate's complaint of being chained to a hitching post), and *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528-29 (8th Cir. 2009) (evaluating claim of shackling female prisoner to her bed while in final stages of labor under the deliberate indifference standard). It is, however, unnecessary to decide that issue here, because Plaintiff's claim against Defendants Richardson and Davis fails under either standard. *See Holley v. Johnson*, No. 7:08cv00629, 2010 WL 2640328, at *12-15 (W.D. Va. June 30, 2010) (evaluating inmate's claim regarding the use of restraints under both

---

[4] Unlike Defendant Turner, neither Richardson nor Davis touched Plaintiff.

9

the excessive force and conditions of confinement standard). Specifically, as explained below, evaluated as a claim of excessive force, Plaintiff fails to demonstrate that Richardson or Davis acted with a sufficiently culpable state of mind. Evaluated as a conditions of confinement claim, Plaintiff cannot satisfy the objective component.

### 1. Excessive Force Analysis

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with 'wantonness': (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko*, 535 F.3d at 239 (*quoting Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 130 S. Ct. at 1178. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." *Id.* (internal quotation marks omitted). Comments or actions by the defendants suggesting a malicious motive are also relevant to the subjective inquiry. *See Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (observing that evidence of the defendant's motives is relevant to the excessive force inquiry).

The use of restraints upon an inmate who is outside of a prison "is eminently reasonable." *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997). Thus, the first and third factors do not suggest that Defendants Richardson and Davis acted with malice. With respect to the second factor, the record indicates that Plaintiff's handcuffs were applied more tightly than was

necessary. Specifically, the transporting officers, when alerted to Plaintiff's complaints, readily loosened Plaintiff's handcuffs without apparently increasing any risk to securely maintaining Plaintiff. Therefore, the second factor favors Plaintiff. None of the remaining factors, however, suggest that Defendants Richardson and Davis acted maliciously or sadistically.

First, Plaintiff does not suggest that Defendants Richardson or Davis had any cause to bear him ill will. Second, according to Defendants Richardson and Davis, they would have sought to temper any discomfort Plaintiff experienced by passing along to his transporting officers Plaintiff's complaints about tight handcuffs. Additionally, the apparently minor nature of Plaintiff's discomfort does not suggest that any reasonable juror could characterize Defendants Richardson and Davis's conduct as a wanton infliction of pain. According to Plaintiff's own account, he knew the transporting officers were responsible for loosening his restraints. (Am. Compl. ¶ 20) Yet, conspicuously absent is any explanation from Plaintiff as to why he did not request the transporting officers to loosen his restraints when they were taking him to the eye clinic. Finally, the relatively minor injuries sustained by Plaintiff belie the notion that Defendants Richardson and Davis acted maliciously and sadistically by failing to loosen Plaintiff's handcuffs. Accordingly, to the extent Claim 3(a) should be evaluated be as a claim of excessive force, Plaintiff fails to demonstrate that Defendants Richardson or Davis acted with a sufficiently culpable state of mind.

### 2. Conditions of Confinement Analysis

Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that

criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (*quoting Hudson*, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.* at 1381.

Here, at best, the evidence indicates that Plaintiff experienced some temporary bruising, swelling, and tenderness around his wrists. Although Plaintiff characterizes the bruising and swelling on his wrists as "extensive" (Am. Compl. ¶ 27), considered in the context of the record, that assertion is not sufficient to substantiate his contention that his injuries were more than *de minimis*. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) ("[T]emporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."), *abrogated by Wilkins*, 130 S. Ct. at 1176-79; *Holley*, 2010 WL 2640328, at *13 (concluding sore muscles from use of restraints was not objectively a sufficiently serious injury). First, there is no indication that Plaintiff sought medical attention for his wrists from the physician who was examining him at MCV. Moreover, there is no indication that this physician concluded that Plaintiff's wrists required medical attention. While Plaintiff asserts he sought medical attention upon his return to LCC, he has not provided any admissible evidence regarding what treatment, if any, was prescribed. Thus, Plaintiff has failed to establish that his injuries were sufficiently serious to support the objective component for either Claim 3(a) or Claim 3(b). Accordingly, Plaintiff's demand for monetary damages in connection with Claims 3(a) and 3(b) will be DISMISSED.

## C. Plaintiff's Demands for Injunctive Relief

In order to obtain injunctive relief with respect an Eighth Amendment claim, the plaintiff:[5]

> must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future.

*Farmer*, 511 U.S. at 846. Plaintiff has failed to demonstrate that Defendant Davis is "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that [he] will continue to do so." *Id.* Specifically, the record indicates that Defendant Davis did not disregard the risk associated with excessively tight restraints, but alerted the transporting officer so that he or she could take the appropriate action. Accordingly, Plaintiff's claims for injunctive relief will be DISMISSED.

## III. CONCLUSION

The September 17, 2009 Memorandum Opinion and Order will be VACATED. Nevertheless for the reasons set forth above, the motions for summary judgment filed by Richardson and Davis (Docket Nos. 48, 79) will be GRANTED. Claims 3(a) and 3(b) will be DISMISSED.

The motion for summary judgment filed by GEO Group and Turner (Docket No. 82) will be DENIED WITHOUT PREJUDICE. Should GEO Group and Turner wish to file a new motion for summary judgment, they must do so within forty (40) days of the date of entry hereof.

---

[5] Plaintiff's claim for injunctive relief against Richardson is moot, since Defendant Richardson has died during the pendency of the action. (Docket No. 78.)

Should GEO Group and Turner file such a motion, they must fully brief their position as to the appropriate standard for evaluating Plaintiff's Eighth Amendment claims.

An appropriate Order shall issue.

Dated: 9-22-10
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge