IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



DANIEL A. MAJETTE,

    Plaintiff,

v.                                                                  Civil Action No. **3:07cv591**

GEO GROUP, INC., *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se*, filed this action alleging that Defendants Turner, Richardson, Davis, and GEO Group subjected him to cruel and unusual punishment in violation of the Eighth Amendment.[1] Majette contends that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim 1 | Defendant Turner violated Plaintiff's rights under the Eighth Amendment because:<br>(a) Turner placed handcuffs too tightly on Plaintiff.<br>(b) Turner failed to provide Plaintiff with access to medical care upon Plaintiff's return to Lawrenceville Correctional Center ("LCC"). |
| Claim 2 | Defendant GEO Group was deliberately indifferent to the conduct of its employees. |
| Claim 3 | Defendants Richardson and Davis violated Plaintiff's rights under the Eighth Amendment because:<br>(a) Richardson and Davis failed to loosen Plaintiff's handcuffs.<br>(b) Richardson and Davis failed to provide Plaintiff with prompt access to medical care for injuries he sustained as a result of his handcuffs. |

By Memorandum Opinion and Order entered on August 6, 2009, the Court dismissed as moot Majette's claims for injunctive relief against Defendants GEO Group and Turner. *See*

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

*Majette v. GEO Group, Inc.*, 3:07cv591, 2009 WL 2434805, at *3 (E.D. Va. Aug. 6, 2009).
Additionally, by Memorandum Opinion and Order entered on September 22, 2010, the Court dismissed Claims 3(a) and 3(b). *See Majette v. Geo Group, Inc.*, 3:07cv591, 2010 WL 3743364, at *8 (E.D. Va. Sept. 22, 2010). The case is currently set for a jury trial on February 22, 2011.

The matter is before the Court on the motion for summary judgment filed by Defendants Turner and GEO Group (hereinafter collectively "Defendants"). Majette has responded. The motion for summary judgment is ripe for disposition.

On January 12, 2011, Majette requested that the Court appoint counsel to assist him in litigating the present action. The issues presented are not unduly complex and Majette's submissions reflect that he is competent to represent himself in the present action. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Accordingly, Majette's motion for the appointment of counsel (Docket No. 105) will be DENIED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond

the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In support of their motion for summary judgment, Defendants have tendered affidavits from Turner and Ed Wright, the Warden of LCC. Additionally, Defendants have submitted copies of Majette's medical records and other prison records regarding the use of handcuffs on Majette. In opposition to the motion for summary judgment, Majette offers his verified amended complaint and his own sworn statement. Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(2). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Furthermore, summary judgment affidavits must "set out facts." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252

(4th Cir. 1991)).[2] In light of the foregoing principles and submissions, the facts set forth below are presumed true for purposes of the motion for summary judgment.

## II. SUMMARY OF PERTINENT FACTS

In June of 2006, Majette was confined at LCC. Prior to June 8, 2006, Defendant Turner and Majette "engage[d] in verbal confron-tations." (Majette Aff. ¶ 6.) Defendant Turner called Majette a child molester in front of other inmates. (Majette Aff. ¶ 6.) Majette complained to Defendant Turner's superiors about Defendant Turner's conduct. (Majette Aff. ¶ 7.)

On June 8, 2006, Majette was transported from LCC to the Medical College of Virginia ("MCV") for an examination at the MCV eye clinic. Defendant Turner and C. Townes were the correctional officers assigned to transport Majette. (Majette Aff. ¶ 8.) Prior to leaving LCC, Defendant Turner placed the handcuffs on Majette. (Majette Aff. ¶ 9; Mem. Supp. Defs.' 2d Mot. Summ. J. Attach. 2 ("Turner Decl.") ¶ 7.) Majette was handcuffed so that his hands were in front of his body. (Turner Decl. ¶ 7.) Majette advised Defendant Turner that the handcuffs were too tight. (Am. Compl. ¶ 15.) Defendant Turner removed the handcuffs, but then replaced them fastening them even more tightly. (Am. Compl. ¶ 15.) Majette once again informed Defendant Turner that the handcuffs were too tight. (Am. Compl. ¶ 15.) Defendant Turner smirked at

---

[2] For example, Majette's assertion that he was "constantly harassed by Officer D. Turner" (Pl.'s Br. Opp'n Defs.' 2d Mot. Summ. J. Majette Aff. ¶ 6 (spelling corrected)) is conclusory and carries little weight in the summary judgment analysis. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990) (emphasizing the "obligation [to set forth specific facts] is particularly strong when the non-moving party bears the burden of proof" (citing *Celotex*, 477 U.S. at 323)).

Majette, but otherwise ignored Majette's complaint. (Am. Compl. ¶ 15.) Defendant Turner placed a black box[3] over Majette's handcuffs. (Turner Decl. ¶ 5.)

Defendant Turner swears that "[b]ased upon my training and experience as a correctional officer, I believed that the handcuffs were of a sufficient tightness to balance Majette's comfort with the need for safety and security during his transportation outside of LCC." (Turner Decl. ¶ 8.) After placing the handcuffs on Majette's wrists, Defendant Turner checked the tightness of the handcuffs by attempting to place one or more fingers between Majette's wrist and the handcuff.[4] (Turner Decl. ¶ 7.) Defendant Turner was able to fit his index and middle fingers between Majette's wrists and the handcuffs. (Turner Decl. ¶ 7.) According to Defendant Turner, "[i]nmates and the correctional officers charged with overseeing the inmates frequently disagree on the appropriate balance between comfort and security." (Turner Decl. ¶ 8.) Defendant Turner swears, "While I intended to make sure that Majette was appropriately handcuffed, it was never my intent to cause him any physical harm or unnecessary discomfort." (Turner Decl. ¶ 8.)

"During the trip from LCC to MCV, which lasted approximately an hour and twenty minutes, [Defendant Turner] observed Majette was twisting and turning his wrists in his handcuffs. [Defendant Turner] did not hear Majette say anything which led [him] to believe that [Majette] was in any sort of distress." (Turner Decl. ¶ 9.) Upon his arrival at MCV, Majette was placed in the MCV holding unit. (Turner Decl. ¶ 10.) After Majette was placed in the holding

---

[3] "A black box is a shield that slips over the handcuffs' locking mechanism to prevent an individual from manipulating or tampering with the handcuffs' lock." (Turner Decl. ¶ 5.)

[4] Defendant Turner recently had completed a training class "that discussed, among other topics, the appropriate way to handcuff an inmate. In this training [Defendant Turner] learned that handcuffs are appropriately tightened if [he] could fit one finger between the inmate's wrist and the handcuff." (Turner Decl. ¶ 4.)

unit, Defendant Turner did not have any further interaction with Majette until it was time to transport Majette back to LCC. (Turner Decl. ¶ 10.)[5]

Officers Richardson and Davis provided security for the holding unit. Majette informed Richardson and Davis "that the handcuffs were too tight and his hands had become numb." (Am. Compl. ¶ 20.) Officers Richardson and Davis "ignored [Majette's] plea and stated: '*it is the duty of the officers from your correctional facility to loosen the restraints.*'" (Am. Compl. ¶ 20.)[6] Majette sat in the holding unit restrained in the handcuffs and the black box for three hours before he was escorted to the eye clinic. (Majette Aff. ¶ 13.) Majette swears he was in pain during this period.[7] (Majette Aff. ¶ 13.)

Upon arriving in the eye clinic, Dr. Leffler asked Majette to hold a device to cover one eye. (Majette Aff. ¶ 14.) Majette could not comply with this request because of his restraints. (Majette Aff. ¶ 14.) "[F]eeling like a caged animal and in pain, . . . [Majette] began to cry from not only the pain and suffering, but also [from] humiliation." (Majette Aff. ¶ 15.) Correctional Officer Townes moved Majette to another room (Majette Aff. ¶ 15) and "noticed the injuries on the plaintiff's hands and wrists and immediately loosened the restraints." (Am. Compl. ¶ 24.)

---

[5] Majette asserts that "Turner was suppose to store his weapon and then proceed to the holding unit to remove the 'black box' device. [But] Turner never came to the holding unit." (Majette Aff. ¶ 11 (internal quotation marks omitted.) Majette's affidavit fails to suggest that he has personal knowledge as to the proscribed procedures for securing inmates who are transported to MCV.

[6] Majette contends that this comment referred to the removal of the black box.

[7] Majette explains "placing handcuffs [on] my person tightly, while standing, will cause the restraints to become even tighter as my arms spread when I sit down." (Majette Aff. ¶ 1.)

"[A]fter approximately five (5) minutes," Correctional Officer Townes "put the restraints back on [Majette], but loosely." (Majette Aff. ¶ 16.)

When Majette returned to the room with Dr. Leffler, Dr. Leffler asked Majette what was wrong. (Majette Aff. ¶ 17.) Majette explained that the handcuffs "were too tight and that [he] couldn't move [his] hands to hold the device to cover [his] eye." (Majette Aff. ¶ 17.) Dr. Leffler noticed Majette's injuries, but "his only advice was to have the medical unit at the institution to look at it." (Majette Aff. ¶ 17.)

After the conclusion of the eye examination, Majette was returned to LCC. Upon arriving at LCC, Defendant Turner wanted to strip search Majette, but Majette refused. (Majette Aff. ¶ 18.) Correctional Officer Townes "advised Turner to stop antagonizing" Majette and told Majette to go the medical department. (Majette Aff. ¶ 18.) While Majette was waiting to enter the medical unit, Defendant Turner approached Majette and ordered Majette to go to his housing unit. (Majette Aff. ¶ 18.) Majette informed Defendant Turner that he was supposed to the go to the medical department. (Majette Aff. ¶ 18.) Defendant Turner insisted that Majette return to his housing unit. (Majette Aff. ¶ 18.)

After arriving at his housing unit, Majette spoke to his resident counselor and showed her his injuries. (Majette Aff. ¶ 19.) The counselor wrote Majette a pass to go to the medical department. (Majette Aff. ¶ 19.) Nurse Powell noted in Majette's medical records that Majette's left wrist had a "slight edema" (*i.e.*, swelling) and "some purplish bruising." (Mem. Supp. Defs.' 2d Mot. Summ. J. Attach. 1, Ex. A ("Medical Report").) The medical records state Majette's right wrist also had an "edema" and "bruising." (Medical Report.) Nurse Powell advised Majette to apply ice to his wrists and take the medication he already had been prescribed for his

lower back pain. (Mem. Supp. Defs.' 2d Mot. Summ. J. Attach. 1, Ex. A ("Nurse Powell's Incident Statement").) Nurse Powell noted, "No further treatment needed [at] this time." (Nurse Powell's Incident Statement.) Majette represents that he "suffered extensive swelling and bruising to both his left and right wrist. The injuries . . . lasted for several days." (Am. Compl. ¶ 27.)

## III. ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (*citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (*quoting Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (*citing Wilson*, 501 U.S. at 301-03). Deliberate indifference requires the plaintiff to

produce evidence that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding and the subjective component is more demanding. *See Williams*, 77 F.3d at 761. With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1179 (2010); *see id.* at 1178 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (*quoting Hudson*, 503 U.S. at 9)). With respect to the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (*quoting Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Specifically, "the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (*quoting Hudson*, 503 U.S. at 7).

A. Claim 1(a)

It is not entirely clear whether Defendant Turner's alleged use of excessive tight restraints should be evaluated as a claim for excessive force or as a challenge to Majette's conditions of confinement. *See Majette v. Geo Group, Inc.*, 3:07cv591, 2010 WL 3743364, at *5 (E.D. Va. Sept. 22, 2010) (citing cases). It is, however, unnecessary to decide that issue here, because Claim 1(a) fails under either standard. *See Holley v. Johnson*, No. 7:08cv00629, 2010 WL 2640328, at *12-15 (W.D. Va. June 30, 2010) (evaluating inmate's claim regarding the use of restraints under both the excessive force and conditions of confinement standard). Specifically, as explained below, evaluated as a claim of excessive force, Majette fails to demonstrate that

Defendant Turner acted with a sufficiently culpable state of mind. Evaluated as a conditions of confinement claim, Majette cannot satisfy the objective component.

### 1. Excessive Force Analysis

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with 'wantonness': (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko*, 535 F.3d at 239 (*quoting Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 130 S. Ct. at 1178. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." *Id.* (internal quotation marks omitted). Comments or actions by a defendant suggesting a malicious motive are also relevant to the subjective inquiry. *See Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (observing that evidence of the defendant's motives is relevant to the excessive force inquiry).

The use of restraints upon an inmate who is outside of a prison "is eminently reasonable." *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997). Thus, the first and third factors do not suggest that Defendant Turner acted maliciously. With respect to the second factor, the record indicates that Majette's handcuffs were applied more tightly than was necessary. Specifically, Correctional Officer Townes, when alerted to Majette's complaints, readily loosened Majette's handcuffs without apparently increasing any risk to securely maintaining Majette. Therefore, the

second factor favors Majette. This fact alone, however, is not sufficient to permit Majette to survive summary judgment. *See Whitley*, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.") Additionally, the fact that Majette and Defendant Turner had a contentious history and Defendant Turner smirked at Majette when Majette complained at the tightness of the handcuffs marginally favors Majette.

Nevertheless, none of the remaining factors suggest that Defendant Turner acted maliciously or sadistically. Significantly, Defendant Turner appears to have made a measured effort to employ the handcuffs only as tightly as necessary to prevent escape while minimizing the discomfort Majette experienced. Specifically, Defendant Turner made sure that he could fit a finger between the handcuffs and Majette's wrist. According to Defendant Turner's training, that level of tightness struck the appropriate balance between the inmate's comfort and ensuring the inmate did not slip out of the handcuffs. Under the fourth *Whitley* factor, such actions reflect a sincere effort by Defendant Turner to temper the amount of force employed. Moreover, such precautions by Defendant Turner go a long way to demonstrating Defendant Turner employed the restraints "'in a good-faith effort to maintain or restore discipline'" rather than "'maliciously and sadistically to cause harm.'" *Iko*, 535 F.3d at 239 (*quoting Hudson*, 503 U.S. at 7); *see Williams*, 77 F.3d at 776 (concluding compliance with prison regulations "would provide powerful evidence that the application of force was tempered and that the officers acted in good faith in imposing the restraints" (*citing Miller v. Leathers*, 913 F.2d 1085, 1088 (4th Cir.1990))).

11

Finally, the relatively minor injuries sustained by Majette belie the notion that Defendant Turner's conduct violated the Eighth Amendment. *See Whitley*, 475 U.S. at 322 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.") Although Majette complained when Defendant Turner initially placed the handcuffs on Majette, Majette did not voice any additional complaints during the drive from LCC to MCV. Furthermore, according to Majette's own account, he knew the transporting officers were responsible for loosening his restraints. (Am. Compl. ¶ 20.) Yet, conspicuously absent is any explanation from Majette as to why he did not request Correctional Officer Townes to loosen his restraints when he arrived at the eye clinic from the holding unit. Finally, the relatively minor injuries Majette sustained do not suggest Defendant Turner tightened the handcuffs to any extreme degree. *See Stanton v. Furlong*, 73 F. App'x 332, 334 (10th Cir. 2003) (upholding dismissal of inmate's complaint that he was handcuffed too tightly where "relatively minor indicia of trauma ultimately found on medical examination" belied the notion that guard's action amounted to a wanton and unnecessary infliction of pain). Accordingly, to the extent Claim 1(a) should be evaluated be as a claim of excessive force, Majette fails to demonstrate that Defendant Turner acted with a sufficiently culpable state of mind.

### 2. Conditions of Confinement Analysis

Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375,

1380 n.3 (4th Cir. 1993) (*quoting Hudson*, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.* at 1381.

Here, at best, the evidence indicates that Majette experienced three to four hours of discomfort and some temporary bruising, swelling, and tenderness around his wrists. Although Majette characterizes the bruising and swelling on his wrists as "extensive" (Am. Compl. ¶ 27), considered in the context of the record, that assertion is not sufficient to substantiate his contention that his injuries were more than *de minimis*.[8] *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) ("[T]emporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."), *abrogated by Wilkins*, 130 S. Ct. at 1176-79; *Holley*, 2010 WL 2640328, at *13 (concluding sore muscles from use of restraints was not objectively a sufficiently serious injury). Thus, Majette has failed to establish that his injuries were sufficiently serious to support the objective component. Accordingly, Claim 1(a) will be DISMISSED.

B.   **Claim 1(b)**

In Claim 1(b), Majette contends that Defendant Turner violated his rights under the Eighth Amendment by impeding his access to medical care when he returned to LCC. Where an

---

[8] Dr. Leffler at MCV concluded that Majette's wrist did not warrant any immediate medical attention. Additionally, although Majette sought and obtained medical attention upon his return to LCC, the nurse concluded that ice and Majette's current pain medication were sufficient to address Majette's discomfort.

Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm.'" *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 n.13 (4th Cir. 2008) (*quoting Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases). Majette has not introduced any evidence from which a reasonable jury could conclude that the brief delay in obtaining medical care upon his return to LCC resulted in substantial harm. Accordingly, Claim 1(b) will be DISMISSED.

C. **Claim 2**

In Claim 2, Majette seeks to hold GEO Group responsible for the alleged constitutional violations of its employee, Defendant Turner. "[T]he principles of § 1983 municipal liability . . . apply equally to a private corporation" when the plaintiff sues the corporation under 42 U.S.C. § 1983. *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003) (alteration and omission in original) (*quoting Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999)). A private corporation, such as GEO Group, "is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin*, 195 F.3d at 728 (citing cases). Because Majette cannot demonstrate that any employee of GEO Group violated his Eighth Amendment rights, Majette's claim against GEO Group must be dismissed. *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001) ("'As there are no underlying constitutional violations by any individual, there can be no municipal liability.'" (*quoting Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999))). Accordingly, Claim 2 will be DISMISSED.

14

The motion for summary judgment (Docket No. 93) will be GRANTED. The action will be DISMISSED.

An appropriate Order shall issue.

Dated: 1-18-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge